UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------

| | : | |
|---|---|---|
| INVACARE CORPORATION, | : | CASE NO. 1:18-CV-62 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Doc. 37] |
| MICHAEL NORDQUIST, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

-------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Invacare Corporation ("Invacare") moves to modify the preliminary injunction that the Court previously granted against Invacare's former employee, Defendant Michael Nordquist, and Nordquist's current employer, Defendant Ki Mobility.[1]

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to modify the preliminary injunction.

## I. Background[2]

Both Plaintiff Invacare and Defendant Ki Mobility design, manufacture, and sell wheelchairs and specialty assistive seating.[3]

Defendant Nordquist previously worked for Plaintiff Invacare, and now he works for Defendant Ki Mobility.[4] With this case, Plaintiff Invacare alleges that Defendant Nordquist violated his Invacare non-competition employment agreement by working for Defendant Ki Mobility.[5] Invacare also alleges that Nordquist possesses, and may use, a significant amount of Invacare's confidential information because of his previous Invacare product development position.[6]

---

[1] Doc. 37. Defendants oppose. Doc. 38. Plaintiff replies. Doc. 40. Defendants sur-reply. Doc. 41-1.
[2] A more extensive factual background can be found in the Court's previous preliminary injunction decision. Doc. 34.
[3] Doc. 30 at 29:20-22.
[4] *Id.* at 78:17-20, 80:24-81:8.
[5] *See generally* Doc. 1.
[6] *See, e.g.*, Doc. 30 at 26:4-30:10 (discussing Invacare's three-year product plan for the years 2018-2020).

Case No. 1:18-cv-62
Gwin, J.

In order to enforce Invacare's contract with Nordquist and to protect Invacare's confidential information, Plaintiff Invacare sought a preliminary injunction from this Court.[7]

After briefing and a hearing, the Court granted a limited preliminary injunction designed to prevent Nordquist from engaging in unfair competition based on Invacare confidential information or customer relationships, while still allowing him (and by extension, Ki Mobility) to compete with Invacare on fair terms.[8]

Plaintiff Invacare now seeks to expand that injunction's reach based on additional emails that Ki Mobility late provided Invacare in discovery.[9] These emails primarily show Nordquist engaging in Ki Mobility sales to smaller customers within the wheelchair market.[10] They also show Nordquist engaging in some non-sales work for Defendant Ki Mobility.[11]

## II. Law and Analysis

"Courts have long held the power to modify injunctions, whether to narrow or broaden them."[12] "[S]ound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen."[13] Ultimately, "the parties may receive modified relief when 'the original purposes of the injunction are not being fulfilled in any material respect.'"[14]

Here, Nordquist's newly revealed emails suggest that the Court's previous injunction does not adequately protect Invacare's confidential information. For that reason, the Court will modify the injunction.

The emails and other documents that the parties have presented to the Court generally fall

---

[7] Doc. 17.
[8] Doc. 34.
[9] *See* Doc. 37.
[10] *See generally* Doc. 37-2.
[11] *See id.*
[12] *LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424, 426 (6th Cir. 2016).
[13] *Sys. Federation No. 91, Ry. Emp. Dept., AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961).
[14] *LFP IP, LLC,* 810 F.3d at 426 (quoting 11A Charles Alan Wright et al., Federal Practice & Procedure § 2961 (3d ed. 2015)).

into two buckets. In the first, Nordquist engages in Ki Mobility sales to smaller companies in the assisted-seating market. In the second, Nordquist is involved in Ki Mobility projects outside of the supervisory regional sales role that he earlier testified to. These projects include direct interaction with customers and broader, non-sales Ki Mobility projects, like Ki Mobility's acquisition of Stealth Seating ("Stealth"). The Court finds that although Nordquist's sales to smaller companies are not problematic, his involvement in broader projects is.

Nordquist's Ki Mobility emails involving sales to smaller seating market companies only show Nordquist engaging in normal, permitted competition. There is no allegation or evidence that Nordquist used any Invacare confidential information in these sales.

The previous evidence in this case suggested that Nordquist's knowledge of Invacare confidential pricing was primarily focused on setting prices for new products or setting national, formulary-level pricing.[15] In his Ki Mobility work, however, Nordquist's emails show him engaging with his sales team to set pricing for individual sales to smaller companies in the assisted-seating market.[16] Plaintiff Invacare has not shown that these sales are anything more than normal competition between two businesses.

Further, the Court was aware that these smaller customers existed when it issued the initial preliminary injunction. Obviously, when Invacare's representative estimated that Invacare's three major customers accounted for 70 to 80 percent of the market,[17] smaller customers must account for the remaining 20 to 30 percent.

The Court will not enjoin Nordquist's sales activities to smaller customers.

Nordquist's emails also show him engaging in more problematic activities that the Court will enjoin.

First, Nordquist potentially improperly leveraged his Invacare relationships. In one email,

---

[15] *See* Doc. 30 at 68:6-13 (explaining that "product managers . . . will work on the formulary").
[16] *See, e.g.*, Doc. 37-2 at 1-4.
[17] Doc. 30 at 67:6-9.

Nordquist details a "long conversation" that he had with Alber's director of sales.[18] Alber is an Invacare subsidiary that sells power assist devices that are added to manual wheelchairs.[19] During this conversation, Nordquist apparently attempted to convince Alber to use Ki Mobility wheelchair products instead of Invacare's wheelchair products.[20]

These types of interactions, where Nordquist attempts to sell to a person he would have interacted with while at Invacare, improperly leverage Nordquist's Invacare relationships or improperly use Invacare confidential information.

The Court will therefore enjoin Nordquist from interacting with individuals working for customers or potential customers that he interacted with as an Invacare employee, including Invacare affiliated entities.

Second, Nordquist has been involved with projects seemingly outside of the regional sales director role that he described to the Court.[21] Plaintiff Invacare argues that Nordquist's involvement in these projects improperly threatens Invacare's confidential information. The Court agrees.

Plaintiff Invacare points to Nordquist's role in Ki Mobility's acquisition of Stealth.[22] The Court notes here that Ki Mobility's president, Doug Munsey, gave sworn testimony that Nordquist had no involvement with Ki Mobility's Stealth acquisition.[23] This statement was false. At Munsey's direction, Nordquist traveled with Munsey to Stealth to evaluate the possible acquisition.[24]

While at Invacare, Nordquist attended and participated in meetings where Invacare's company-wide strategy and future plans were discussed.[25] In non-sales projects like acquisitions, Nordquist's knowledge of Invacare's future plans would be especially useful.

---

[18] Doc. 37-2 at 5.
[19] Doc. 37-3 at ¶ 7.
[20] Doc. 37-2 at 5.
[21] *See id.* at 9-16 (detailing plans for Nordquist to travel to Alber to evaluate a possible acquisition).
[22] *See id.*
[23] Doc. 30 at 136:5-12 (Defense Counsel: "Has Mr. Nordquist had any involvement for Ki Mobility in that [Stealth Seating] transaction?" Mr. Munsey: "No.").
[24] *See* Doc. 37-2 at 9-16.
[25] *See* Doc. 30 at 26:13-28:20.

The Court agrees with Plaintiff Invacare that Nordquist's involvement in these types of Ki Mobility non-sales, company-wide projects poses a sufficiently high risk to Invacare's confidential information that it should be enjoined.

### III. Modified Injunction Terms

The Court modifies the terms of the injunction as follows:

1. Ki Mobility may continue to employ Nordquist.

2. Nordquist may not work in product development for 18 months from the date of the Court's June 1, 2018 Order.

3. Further, Nordquist may not have any contact with any individual working for Invacare's three largest accounts (NuMotion, NSM, and the V.A. Hospitals) for 12 months from the date of the Court's June 1, 2018 Order.

4. Nordquist may not attend any trade shows for 12 months from the date of the Court's June 1, 2018 Order.

5. Nordquist may supervise and advise other sales associates, so long as that supervision does not violate any of this injunction's other terms.

6. Nordquist is prohibited from the disclosure or use of any Invacare Confidential Information, as that term is defined in the 2004 contract.

7. Nordquist may not have any contact with any individual working for any Ki Mobility customer or potential customer that he was previously involved with during his Invacare employment for 12 months from the date of the Court's June 1, 2018 Order.

8. Nordquist may not participate in, work on, or otherwise contribute to Ki Mobility projects not involving his sales team's sale of product to customers. This prohibition includes mergers, acquisitions, sales of subsidiaries, and all other similar endeavors. The provisions of this paragraph shall expire 12 months from the date of the Court's June 1, 2018 Order.

9. Defendant Ki Mobility will neither encourage nor cause Nordquist to violate any of the terms

of this injunction.

10. Unless stated otherwise, this injunction will expire 18 months from the date of the Court's June 1, 2018 Order.

11. The terms of this injunction should not be construed to prohibit Nordquist from interacting with other Ki Mobility or Ki Mobility subsidiary employees.

## CONCLUSION

For those reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to modify the preliminary injunction. The Court **ENJOINS** Defendants Nordquist and Ki Mobility as described in Part III of this opinion.

IT IS SO ORDERED

Dated: August 9, 2018      *s/      James S. Gwin*
                            JAMES S. GWIN
                            UNITED STATES DISTRICT JUDGE